# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| STEVEN D. MULLINS, | : | |
| Plaintiff, | : | |
| | | Case No. 3:09cv00049 |
| vs. | : | |
| | | District Judge Walter Herbert Rice |
| MICHAEL J. ASTRUE,<br>Commissioner of the Social<br>Security Administration, | : | Magistrate Judge Sharon L. Ovington |
| | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

## I.    INTRODUCTION

Plaintiff Steven D. Mullins applied for Disability Insurance Benefits (DIB) and for Supplemental Security Income (SSI) claiming that he was under a "disability" within the meaning of the Social Security Act. Plaintiff's applications were denied at all stages of administrative review including, most significantly, by Administrative Law Judge (ALJ) Thomas R. McNichols II. ALJ McNichols held a hearing, during which Plaintiff testified and was represented by counsel. (Tr, 382-423). Following the hearing, ALJ McNichols issued a written decision concluding that Plaintiff was not under a "disability" and was therefore not eligible to receive DIB or SSI. (Tr. 19-37). This Court has jurisdiction in this case to review ALJ McNichols' decision. *See* 42 U.S.C. §§405(g), 1383(c)(3).

The case is before the Court upon Plaintiff's pro se Statement of Errors (Doc. #9), the Commissioner's Memorandum in Opposition (Doc. #15), the administrative record,

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

and the record as a whole.

## II.    FACTUAL BACKGROUND

### A.    Plaintiff and His Testimony

On the date Plaintiff's claimed disability began (September 15, 2003), and during other pertinent times, he was under fifty years old and was thus considered to be a "younger person" for social security purposes.  *See* 20 C.F.R. §404.1563(c); 416.963(c).[2] He has a high school education.  (Tr. 68).  He worked as a tool maker from 1983 to 2003. (Tr. 63).

During the ALJ's hearing, Plaintiff explained why he stopped working his last job as a tool maker as follows:  "I missed work due to my pancreas, it was causing me a lot of trouble, I got some kind of cyst on it and stuff, and then..., about a month after, I was fired for missing work.  I had a doctor's note and everything, but they, I ended up breaking my, crushed my ankle, and they had to put a rod through it and put like 14 screws and some plates in it and stuff...."  (Tr. 388-89).  Plaintiff further explained that he was struck by a car when he was changing a tire and broke his tibia and fibula and "cracked his skull..." (Tr. 389).  He testified that he has not been able to work since that accident.  (Tr. 389-90).

Plaintiff described his side effects from his head injury as follows: "It make it really hard to concentrate and stuff, I can't tell you, like flickering in my, like if I focus on something, trying to work on like a car or something like that, [I] feel like a flickering in my eyes and I just ... it's like my brain's shorting out is what it feels like....  I don't know what's going on."  (Tr. 390).  His head injury also causes him to feel like there are shadows around him.  (Tr. 391).

Plaintiff's left ankle swells up so it is "real big," and he cannot stand or walk on it

---

[2]   The remaining citations to the Regulations will identify only the pertinent DIB Regulations, with full knowledge of the corresponding SSI Regulations.  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) .

for too long or it will swell and hurt. (Tr. 391). He has screws and plates in his left ankle, which "just hurts," and it hurts to walk on any time. (Tr. 391, 399). On a pain scale of zero (no pain) to ten (worst pain), Plaintiff estimated his ankle pain at seven. (Tr. 399).

Plaintiff also has low back pain caused by a bugling disk. His family physician Dr. Kominiarek treats him with monthly injections. (Tr. 392-93). Plaintiff explained that he broke his back "in a couple of places" in 1989 and spent six or seven months in a back brace. (Tr. 393, 395, 400 ). He has had daily back pain ever since. (Tr. 400). He described it as a steady pain, a "duller pain" that is constant. *Id.* He explained, "there's days when I can't even hardly get out of the bed because ... it gets like a little tension, like pulling pain, and a burning sensation." (Tr. 400-01). He assessed his low back pain as a seven on the zero-to-ten pain scale. (Tr. 401). Plaintiff estimated that he could walk for about 100 to 200 feet before needing to sit due to low back pain. (Tr. 403-04).

Plaintiff also has trouble with his right shoulder and gets a cortisone injection, which helps it feel better for a while. (Tr. 393). He also tore a main ligament in his right knee. This causes him to feel weakness every couple of months and his right leg "give out on [him] every so often." (Tr 395).

As to his mental health, Plaintiff has "a lot of depression." (Tr. 395). When asked how it affects him, Plaintiff explained, "I sleep a lot and ... it's hard to get out..., and I'm pretty unsociable anymore, I stay pretty much in." (Tr. 396). He receives counseling and sees a psychiatrist about every six weeks for medication monitoring. (Tr. 396-97). His medications make his head feel fuzzy sometimes, but they also seem to help. (Tr. 397).

Plaintiff acknowledged during the ALJ's hearing that he had five DUI convictions and "had a drug problem." (Tr. 410). He was diagnosed in 2004 with cocaine and alcohol abuse. *Id.* He testified that he was drinking less and had not used drugs like cocaine for four or five years. (Tr. 410-11).

When asked during the ALJ's hearing why he could not consistently perform a

simple, low-stress job that did not require a whole lot of physical exertion, Plaintiff answered:

> I know I can't stand very long if I'm standing, like especially on concrete, that's what I used to stand on and it, I mean, it just gets to my, where I got the knot on the bottom of my foot, the ankle, then the tibia, fib[ula] where it starts causing me pain, and [the] lower right part where that pain's shooting down my leg, it's just hard to sit, or stand....

(Tr. 418).


### B.      Additional Evidence

The ALJ noted in his decision that Plaintiff has been in numerous vehicular accidents, including accidents in 1989, 2000, 2002, 2003, and 2004. (Tr. 13). Plaintiff's medical records document hospitalizations and other treatment beginning in April 2001. *See* Tr. 99-192. Plaintiff began seeing Dr. Kominiarek as early as 2002 and continued to see him until at least 2008.

Plaintiff saw Dr. Kominiarek in March 2006 because of back pain. (Tr. 201-05). Dr. Kominiarek characterized Plaintiff's back pain as "uncontrolled" and "complicated." (Tr. 205). Dr. Kominiarek completed a form in March 2006 assessing Plaintiff's ability to work. (Tr. 199-200). Dr. Kominiarek checked boxes indicating his opinion that Plaintiff could stand/walk less than 1 hour, sit less than 1 hour, and frequently lift/carry up to 20 pounds. (Tr. 200). Plaintiff was moderately limited in pushing/pulling, bending, reaching, and handling, and not significantly limited in repetitive foot movements. (Tr. 200). Dr. Kominiarek also checked a box indicating his opinion that Plaintiff was "employable." (Tr. 200).

Lumbar spine x-rays in March 2006 showed mild compression of the L2 vertebral body and no abnormalities in the sacrum and coccyx. (Tr. 265). A March 2006 lumbar bone scan revealed no abnormalities. (Tr. 260). A lumbar spine MRI in June 2006 showed degenerative disc disease at L4-5 and L5-S1 with bulging disc bulging, mild

4

central canal stenosis at L4-5, and central disc protrusion at L5-S1 with no significant spinal canal stenosis. (Tr. 257).

Dr. Kominiarek saw Plaintiff from March 22, 2006 to January 2008. (Tr. 209-312, 355, 357). Examinations showed brisk and symmetrical reflexes, normal sensation, and normal coordination and fine motor skills; Plaintiff denied gait disturbances and atrophy. (Tr. 209, 211, 213, 216, 218, 221-22, 225, 227, 229, 231, 233, 235, 274, 276, 280-81, 283, 285, 289, 292, 295, 298, 301, 304, 306, 309, 312, 353, 355, 365, 367). Dr. Kominiarek treated Plaintiff's back pain with sacroiliac-joint injections from May to September 2006 and from December 2006 to February 2008. (Tr. 237-45, 266-72, 358-62, 369-73).

In January 2007 Dr. Kominiarek completed a form assessing Plaintiff's ability to work. (Tr. 193-98). Dr. Kominiarek believed that Plaintiff could lift 6-10 pounds frequently or occasionally; he was markedly limited in bending and moderately limited in pushing/pulling, reaching, and repetitive foot movements; he could stand/walk less than 1 hour; he could sit less than 1 hour. (Tr. 194). Dr. Kominiarek also checked a box indicating his opinion that Plaintiff was "unemployable." (Tr. 194).

## III.    ADMINISTRATIVE REVIEW

### A.    "Disability" Defined and the Sequential Evaluation

The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986). A DIB/SSI applicant bears the ultimate burden of establishing that he or she is under a disability. *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v.*

5

*Mathews*, 574 F.2d 359, 361 (6ᵗʰ Cir. 1978).

Social Security Regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence. *See* 20 C.F.R. §404.1520(a)(4). Although a dispositive finding at any Step terminates the ALJ's review, *see also Colvin v. Barnhart*, 475 F.3d 727, 730 (6ᵗʰ Cir. 2007), if fully considered, the evaluation answers five questions:

1.      Has the claimant engaged in substantial gainful activity?

2.      Does the claimant suffer from one or more severe impairments?

3.      Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the Listings), 20 C.F.R. Subpart P, Appendix 1?

4.      Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5.      Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6ᵗʰ Cir. 2001).

### B.      The ALJ's Decision

ALJ McNichols' sequential evaluation reached the following conclusions:

Step 1:      Plaintiff had not engaged in substantial gainful activity since his claimed disability onset date of September 15, 2003.

Step 2:      Plaintiff suffered from the severe impairments of degenerative disk disease at L4-5 and L5-S1, depression with anxious features, status post left ankle/leg fractures, and a history of substance abuse.

Step 3:      Plaintiff did not have an impairment or combination of impairments that met or equaled an impairment in the Listings.

Step 4:        The ALJ assessed Plaintiff's Residual Functional Capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work[3] ... except is precluded from lifting more than 10 lbs. He is further precluded from all climbing of ropes, ladders, and scaffolding. The claimant is precluded from work exposing him to workplace hazards, such as unprotected heights and dangerous machinery. The claimant is precluded from working on uneven surfaces. The claimant must be able to exercise a sit/stand option every 30 minutes. The claimant is precluded from having to deal directly with the general public. The claimant is precluded from repetitive use of foot controls. The claimant cannot be expected to maintain concentration on a single task for longer than 15 continuous minutes at a time. The claimant can perform only occasional work above shoulder level on the right.

(Tr. 16).

Step 4:        Plaintiff could not perform his past relevant work as a tool maker for General Motors.

Step 5:        Plaintiff could perform a significant number of jobs existing in the national economy.

As a result of the ALJ's findings throughout the sequential evaluation, he concluded that Plaintiff was not under a disability and not eligible to receive DIB or SSI. (Tr. 13-24).

## IV.    JUDICIAL REVIEW

Judicial review of an ALJ's decision determines whether substantial evidence in the administrative record supports the ALJ's factual findings. *Bowen v. Comm'r. of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). "Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a

---

[3]  Under the Regulations, "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds...." 20 C.F.R. §404.1567(b).

conclusion.'" *Bowen*, 478 F3d at 746 (citing in part *Richardson v. Perales*, 402 U.S. 389, 401 (1977)). It consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6ᵗʰ Cir. 2007). Judicial review for substantial evidence is deferential not *de novo*. *See Cruse v. Comm'r. of Social Sec.* 502 F.3d 532, 540 (6ᵗʰ Cir. 2007); *see also Cutlip v. Secretary of Health and Human Servs.*, 25 F.3d 284, 286 (6ᵗʰ Cir. 1994). The Court's agreement or disagreement with the ALJ's findings plays no role in the substantial evidence review, and no significance attaches to contrary evidence in the record – if other substantial evidence supports the ALJ's findings. *Rogers*, 486 F.3d at 241; *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6ᵗʰ Cir. 1999).

Reviewing for substantial supporting evidence is not the stopping point of judicial analysis. Courts also determine whether the ALJ applied the correct legal criteria. *See Bowen*, 478 F.3d at 746. If the ALJ did not, the decision may not be upheld even when substantial evidence supports the ALJ's findings. *See id.* For example, a decision will not be upheld where the ALJ failed to apply the legal standards mandated by the Social Security Regulations and where that failure prejudices a claimant on the merits or deprives the claimant of a substantial right. *See Bowen*, 478 F.3d at 746 (and cases cited therein). Through *Bowen* and other recent Sixth Circuit cases, an ALJ's failure to apply the correct legal criteria – at least when evaluating medical source opinions – mandates further judicial review for harmless error. *Bass II v. McMahon*, 499 F.3d 506, 512 (6ᵗʰ Cir. 2007); *Blakly v. Comm'r. of Soc. Sec.*, 581 F.3d 399, 409-10 (6ᵗʰ Cir. 2009); *see also Bowen*, 478 F.3d at 747-49; *Wilson v. Comm'r. of Soc. Security*, 378 F.3d 541, 547-49 (6ᵗʰ Cir. 2004). Consequently, if the ALJ erred by not applying the correct legal criteria but the error was harmless, the decision should be affirmed. *See Bass II*, 499 F.3d at 512 (and cases cited therein).

## V.    DISCUSSION

Plaintiff asserts the following in his concise Statement of Errors:

I have seen pain management Doctor at the Address of 1010 Woodman
Drive, Dayton, Ohio 45432. The name of the doctor I saw at this address
was T. Njuyen, D.O.... Dr. Njuyen told me that I need to have surgery on
my back; he said that he would try medication first and he would also give
me epidurals, to see if that would help. However, none of it seems to be
helping me and now I'm going to have the Doctor go ahead and schedule
my surgery.

My family doctor Robert A. Kominiarek D.O. FACOFP at Preble County
Family Practice ... has had me unable to work since April of 2003....

(Doc. #9 at 1).

Reviewing the ALJ's decision for legal error reveals none. The ALJ correctly
described each step of the five-step sequential evaluation. *See* Tr. 12-13. At Step 1 the
ALJ reached findings favorable to Plaintiff. *See* Tr. 13. At Step 2 the ALJ found that
Plaintiff had several severe impairments. Consequently, Plaintiff met his burden at Step
2, leading the ALJ to continue his sequential evaluation to the subsequent sequential
Steps. *See* Tr. 13-15. Any arguable error at Step 2 therefore lacks merit. *See Anthony v.
Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008)(citing *Maziarz v. Sec'y. of Health &
Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)(parenthetical omitted).

The ALJ detailed his review of the evidence in support of his determination that
Plaintiff's impairments did not meet or equal the criteria in several Listing sections,
including Listings 12.04, 12.06, and 12.09. *See* Tr. 15-16. The ALJ also considered
Plaintiff's impairments in combination and concluded that his impairments did not meet
or equal the Listing criteria. *See* Tr. 15-16. And the ALJ's factual findings at Step 3,
including his consideration of Dr. Kominiarek's records, were supported by substantial
evidence of record. *See id.* (and evidence discussed therein).

Viewing Plaintiff's challenges in the light most favorable to him, he attacks the
ALJ's findings at Steps 4 and 5 of the sequential analysis. At these Steps the ALJ
reasonably determined that Plaintiff could not perform his past relevant work but could
perform a significant number of jobs existing in the national economy. *See* Tr. 16-23.

Plaintiff asserts in his Statement of Errors that his back pain is so severe that he must undergo surgery. However, the ALJ properly considered and assessed Plaintiff's pain and credibility. (Tr. 16-21). The ALJ's credibility findings are supported by the record and thus entitled to deference. *See Gooch v. Secretary of Health and Human Services*, 833 F.2d 589, 592 (6th Cir. 1987); *see also Villarreal v. Secretary of Health and Human Services*, 818 F.2d 461, 464 (6th Cir. 1987). The ALJ properly considered and assessed Plaintiff's allegations of his symptoms – including his back pain – and he reasonably determined that based on the evidence of record, Plaintiff was not fully credible. *See* Tr. 16-21. The ALJ explained that in assessing Plaintiff's credibility he considered various factors including the location, duration, frequency, and intensity of Plaintiff's symptoms; the relevant objective medical evidence; factors that precipitate and aggravate the symptoms; effectiveness and side effects of any medications Plaintiff took to alleviate symptoms; treatment other than medication; and Plaintiff's inconsistent statements about his termination of employment. *See* Tr. 24. Although Plaintiff's lumbar spine MRI showed degenerative disc disease at L4-5 and L5-S1 with bulging disc bulging, mild central canal stenosis at L4-5, and central disc protrusion at L5-S1 with no significant spinal canal stenosis (Tr. 257), such diagnostic findings do not automatically support Plaintiff's pain testimony. For example, the Sixth Circuit has affirmed findings that claimants with much more significant impairments were not disabled. *See Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 230-31 (6th Cir. 1990) (affirming finding of not disabled where claimant had a herniated disc and degenerative arthritis in the spine).

Perhaps more importantly, Plaintiff's objective clinical tests did not support his pain testimony. Examinations showed brisk and symmetrical reflexes, normal sensation, and normal coordination and fine motor skills, and Plaintiff denied gait disturbances and atrophy. *See* Tr. 204, 209, 211, 213, 216, 218, 221-22, 225, 227, 229, 231, 233, 235, 274, 276, 280-81, 283, 285, 289, 292, 295, 298, 301, 304, 306, 309, 312, 353, 355, 365, 367).

The existence of few neurological deficits and no atrophy tend to detract from Plaintiff's claim of disabling pain. *See* 20 C.F.R. §404.1529(c)(2); *see also Crouch v. Secretary of Health and Human Serv's.*, 909 F.2d 852, 857 (6ᵗʰ Cir. 1990); *Blacha*, 927 F.2d at 230-31 (no atrophy and no neurological deficits supported the ALJ's finding that back pain was not disabling). Consequently, the diagnostic and clinical medical evidence did not mandate the ALJ to fully credit Plaintiff's pain testimony. The ALJ instead considered the medical evidence and reasonably determined such evidence did not support Plaintiff's allegations of disabling pain. *See* Tr. 16-20.

Plaintiff asserts that his family physician Dr. Kominiarek determined that he has been unable to work since April 2003. In March 2006 and in January 2007, Dr. Kominiarek completed forms opining Plaintiff was under a disability. (Tr. 194, 198, 200). The ALJ discussed and weighed the opinions of Dr. Kominiarek in accordance with controlling law, and he reasonably determined that because of his impairments, Plaintiff could do a limited range of light exertional work. (Tr. 16-22). The regulations and case law recognize that the opinion of a treating physician is entitled to controlling weight only when it is well supported by adequate medical data, including medical signs and laboratory findings, and when it is not inconsistent with other substantial evidence. *See* 20 C.F.R. § 404.1527(d)(2); *see also Walters v. Commissioner of Social Security*, 127 F.3d 525, 530 (6ᵗʰ Cir. 1997). In the event that a treating physician's opinion is not well supported or is inconsistent with other evidence, the following factors apply to determine what weight to place on the opinion: (1) the length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the amount of evidence the medical source provides as support for the opinion; (4) the consistency between the opinion and the record as a whole; (5) the specialty of the treating physician; and (6) other factors. *See* 20 C.F.R. §404.1527(d)(2)-(6).

The ALJ properly recognized that Dr. Kominiarek treated Plaintiff, and the ALJ gave Dr. Kominiarek's opinions appropriate consideration under the applicable legal

criteria set forth in 20 C.F.R. §404.1527. *See* Tr. 21-22. The ALJ also provided good reasons why he did not rely on Dr. Kominiarek's opinions. *See* Tr. 21-22. The ALJ explained that he declined to give Dr. Kominiarek's opinions controlling weight because his opinions were inconsistent with each other and were usupported by objective medical findings. (Tr. 21-22). The record reveals that Dr. Kominiarek's March 2006 and January 2007 opinions were somewhat inconsistent. In March 2006 Dr. Kominiarek found Plaintiff was "employable," but he also found Plaintiff could stand/walk and sit less than 1 hour each in an 8-hour day. (Tr. 200). In contrast, in January 2007 Dr. Kominiarek found Plaintiff was "unemployable," even though he could stand/walk and sit less than 1 hour each in an 8-hour day. (Tr. 194, 198). Additionally, in March 2006 Dr. Kominiarek reported Plaintiff's problems started in March 2006, *see* Tr. 199; yet in January 2007 Dr. Kominiarek reported Plaintiff's problems started prior to 2000, *see* Tr. 193. The record, moreover, lacks medical evidence from the March 2006 opinion to the January 2007 opinion sufficient to support or explain these inconsistencies.

The ALJ considered the record evidence, including the opinions of Dr. Kominiarek, and reasonably concluded Plaintiff retained the residual functional capacity to perform a reduced range of light work. The ALJ was not required to grant significant weight to these opinions because they were unsupported by objective medical findings and treatment notes. The lack of record support for the opinions of Dr. Kominiarek, along with specific examples cited in the ALJ's decision constitutes "good reasons" for rejecting those opinions. *See Wilson*, 378 F.3d at 544 (citing Soc. Sec. Ruling 96-2p, which explains that ALJ's decision must contain specific reasons for the weight given an opinion supported by evidence in the record). The ALJ appropriately declined to give controlling weight to the opinion of Plaintiff's family physician and reasonably explained his reasons for doing so. *See Stiltner v. Commissioner of Social Security*, 2007 WL 2264414 (6th Cir. Aug. 7, 2007) (citing *Smith v. Comm'r. of Social Security*, 482 F.3d, 873, 877 (6th Cir. 2007) (approving ALJ's decision declining to give treating sources

controlling weight where ALJ's decision stated that sources' reports were "inconsistent with the overall evidence of record" and sources formed their opinion solely from claimant's subjective symptoms); *Anderson v. Comm'r. of Social Security*, 195 Fed. Appx. 366, 370 (6th Cir. 2006) (approving ALJ decision declining to give treating physician controlling weight where ALJ's decision stated "that the doctor's overall treatment notes did not support and were not consistent with his conclusory assertion that [the claimant] was disabled"); *cf. Rogers*, 486 F.3d at 245-46 (remanding where ALJ did not explain weight given to treating physician's opinion); *Bowen*, 478 F.3d at 749-50 (remanding where ALJ "entirely failed to address the primary treating source's presumptively supportable opinion"); *Cutlip*, 25 F.3d at 287 (ALJ not bound by treating physicians' opinions, especially where there is substantial evidence to the contrary).

Accordingly, Plaintiff's Statement of Errors lacks merit.

## IT IS THEREFORE RECOMMENDED THAT:

1.   The Commissioner's final non-disability decision be affirmed; and

2.   The case be terminated on the docket of this Court.


January 25, 2010                                    s/ Sharon L. Ovington
                                                    Sharon L. Ovington
                                                    United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).